**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



**CIVIL MINUTES - GENERAL**

Case No. SACV 11-192-DOC (MLGx)                                          Date: December 12, 2011
Title: MICHAEL J. DOBSON, ET AL. -V- TWIN CITY FIRE INSURANCE COMPANY, ETC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                   NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; (2) DENYING DEFENDANTS' MOTION TO BIFURCATE; AND (3) DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Before the Court is (1) Defendants' Motion to Dismiss the third and sixth causes of action from the First Amended Complaint ("FAC") (Dkt. 48), (2) Defendants' Motion to Bifurcate (Dkt. 49), and (3) Defendants' Motion for Protective Order (Dkt. 58). The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; Local Rule 7-15.  After considering the moving, opposing and replying papers thereon, and for the reasons stated below, the Court hereby (1) GRANTS IN PART and DENIES IN PART the Motion to Dismiss [48], (2) DENIES the Motion to Bifurcate [49], and (3) DENIES the Motion for Protective Order [58].

   I.   **BACKGROUND**

Plaintiffs Michael J. Dobson, Richard D. Teasta, and Allen F. Braun (collectively, the "Insureds") are the former officers of EZ Lube, LLC ("EZ Lube"). The Insureds allege they are covered under a Director and Officers insurance policy ("D&O Policy") effective from April 22, 2009, to November 13, 2015, ("Policy Period") and underwritten by Defendant Twin City Fire Insurance Company ("Twin City") and its parent company Hartford Financial Services Group, Inc., ("Hartford") (collectively, "Defendants"). Pursuant to the D&O Policy, the Insureds are allegedly covered in their

capacity as directors and officers of EZ Lube provides for a $10,000,000 aggregate limit of liability.

The Insureds allege that, under to the D&O Policy, they are covered for "[l]oss on behalf of the Insured Persons resulting from an Insured Person Claim first made against the Insured persons during the Policy Period . . . for a Wrongful Act by the Insured Persons . . . ." They also allege that the D&O Policy defines "loss" as "the amount that the Insureds are legally liable to pay solely as a result of a Claim . . . including Defense Costs, compensatory damages, settlement amounts, pre- and post-judgment interests, costs awarded pursuant to judgements . . . ."

On December 9, 2008, EZ Lube filed a voluntary petition under Chapter 11 Bankruptcy. The Joint Plan of Reorganization confirmed by the Bankruptcy Court allegedly established a Plan of EZ Lube and Xpress Lube-Tech, Inc. (the "Plan") for the benefit of the unsecured creditors of the Debtors (the "Committee"). On August 6, 2010, Invotex, Inc., ("Invotex") as trustee for the Plan trust, filed a Complaint (the "Invotex Complaint"), SACV 10-1189 DOC, ("Invotex Action") alleging claims arising from a transaction involving EZ Lube that occurred in December 2005 ("LBO Transaction"). In the Invotex Complaint, Invotex alleges that the Insureds, as former officers and directors of EZ Lube, breached their fiduciary duties instructing and consummating the LBO Transaction and received fraudulent transfers. Pursuant to the Invotex Complaint, Invotex seeks to avoid and recover approximately $42 million in transfers made to the Insureds and, pursuant to the breach of fiduciary duty claim, $38,827,968 from the Insureds as jointly and severally liable defendants.

The Insureds allege that because they were officers and directors of EZ Lube during the relevant time period, they are covered by the D&O Policy in relation to the Invotex Action and thus Defendants have a duty to reimburse the defense fees and costs as incurred, as well a duty to indemnify them against future loss. Defendants, however, allegedly denied coverage under the D&O Policy on many different grounds.

After Defendants filed their first motion to dismiss, denied by the Court on April 14, 2011, the Insureds filed a motion for leave to join Plaintiff Ironshore Indemnity, Inc. ("Ironshore"), which Defendants did not oppose.  After Defendants refused to defend the Insureds, the Insureds turned to Ironshore for coverage in the Invotex action.  Ironshore had previously issued EZ Lube an excess D&O policy with limits of $5,000,000, excess of the underlying Twin City Policy.  (FAC, Ex. W, p. 321.)  Ironshore ultimately settled the Invotex action and the Insureds subsequently assigned their bad faith and breach of contract claims against Defendants to Ironshore.  The Court granted leave to join Ironshore as a Plaintiff.

On September 19, 2011, shortly after Ironshore was joined, the Plaintiffs filed their FAC. The FAC asserts claims for: (1) breach of contract (duty to reimburse defense costs); (2) breach of contract (duty to indemnify); (3) tortious breach of the implied covenant of good faith and fair dealing;

(4) subrogation; (5) declaratory relief and judgment; and, (6) negligent infliction of emotional distress.[1] On September 30, 2011, Defendants filed the instant Motion to Dismiss the third and sixth causes of action for bad faith and negligent infliction of emotional distress, respectively.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts that, when taken as true, allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions need not be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief is a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

## III. DISCUSSION

### A. Motion to Dismiss

#### 1. Bad Faith Claim

Defendants contend that the Insureds assigned their bad faith claim to Ironshore, and thus the claim is improperly pleaded on behalf of all Plaintiffs, and seeks impermissible double recovery (i.e., only Ironshore may seek *Brandt* attorneys' fees and only the Insureds may seek punitive and emotional distress damages). Defendants point to the Insureds Assignment to Ironshore, which assigns their breach of contract claims, bad faith claim, and right to recover *Brandt* fees. *See* FAC, Ex. X.

Plaintiffs oppose on the grounds that their bad faith claims is pleaded on behalf of all Plaintiffs to avoid impermissible claim splitting of a single cause of action. They argue that they have followed controlling case law requiring the assignor and assignee to join together as plaintiffs in one law suit to assert a claim for damages.

---

[1] The first two claims are brought by Ironshore as assignee of the Insureds, the third claim is brought by all Plaintiffs, the fourth claim is brought by Ironshore, the fifth claim is brought by all Plaintiffs, and the sixth claim is brought by the Insureds.

The Court agrees with Plaintiffs' approach. The Assignment between the Insureds and Ironshore makes clear that the Insureds "shall retain their claims for punitive, emotional and personal injury damages, which the Parties expressly acknowledge are non-assignable under the California Supreme Court's holding in *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252 (2006)." (FAC, Ex. X, p. 347.) Indeed, *Essex* recognizes bad faith causes of action may be brought by an assignee who has joined together with insured parties in order to protect both the interests of the assignee of the bad faith claim, as well as the insured parties, who retain the right to nonassignable claims (i.e., punitive, emotional, and personal injury damages). *Id.* at 1261-62. While Defendants claim that this arrangement is not made clear in the FAC, the Court finds the approach of a single cause of action, with the Insureds and Ironshore joined together, preferable to two separate bad faith claims necessarily split based on the type of damages sought. Defendants are on notice of which Plaintiffs seek which damages (i.e., *Brandt* fees by Ironshore and nonassignable damages by the Insureds). Moreover, because Plaintiffs acknowledge that certain damages have been assigned while other damages are nonassignable, they will be estopped from denying this distinction later in the proceedings. This is sufficient to prevent the double recovery scenario raised by Defendants.

Accordingly, the motion to dismiss is denied as to the third claim for relief.

### 2. NIED Claim

Defendant argues that California law does not recognize a separate cause of action for negligence, or the related claim for negligent infliction of emotional distress ("NIED") by an insured against an insurer.

Plaintiffs oppose on the grounds that such a claim is recognized under California law.

The Court finds Judge Pregerson's decision in *Bates v. Hartford Life and Acc. Ins. Co.*, 765 F. Supp. 2d 1218, 1222 (C.D. Cal. 2011), particularly instructive in resolving this dispute. In *Bates*, the court explained why an NIED claim cannot lie in California against an insurer based on allegations of improper claims handling.

> Plaintiffs confuse an independent claim for negligent infliction of emotional distress and the possibility of damages for emotion[al] distress that may be recovered incidental to a bad faith action. Plaintiffs may claim only the lat[t]er. As Plaintiffs concede, Plaintiffs cannot bring a negligence claim against Defendant on the basis of a denial of an insurance claim. *See, e.g.*, *Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal. App. 4th 249, 254, 84 Cal. Rptr. 2d 799 (1999) (explaining that "negligence is not among the theories generally available against insurers"). In California "there is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (Cal. 1993). Rather, as the California Supreme Court has made clear, "[t]he tort is negligence . . . ." *Id.* Plaintiffs' claims may

be actionable as a breach of contract or bad faith claim, and Defendant does not move to dismiss those claims, but Plaintiffs cannot recover under any theory that Defendant "negligently" handled their claim.

*Id.*

Contrary to Plaintiffs' argument, Judge Pregerson did not dismiss the NIED claim based on the plaintiffs' status as policy beneficiaries rather than "direct victims." The decision contains no such discussion.

The cases cited by Plaintiffs do not convince the Court that the ruling in *Bates* should not apply here. In *Johnson v. Mutual Ben. Life Ins. Co.*, 847 F.2d 600, 603 (9th Cir. 1988), an action by an insured against an insurer which included an NIED claim, the Ninth Circuit noted that "California recognizes that 'a cause of action may be stated for the negligent infliction of serious emotional distress.'" *Id.* (citing *Molien v. Kaiser Found. Hosp.*, 27 Cal. 3d 916, 930 (1980)). While this statement is accurate, California does recognize an NIED cause of action generally, the case cited by the Ninth Circuit is not in the insurance context and the Ninth Circuit did not explicitly hold or even discuss whether recovery of emotional distress by direct victims, as discussed in *Molien*, may be applied against insurers. Although Plaintiffs cite *Johnson* to show that the Ninth Circuit has already foreclosed Defendants' present argument, the Court finds the opposite to be true. In *Tento Intern., Inc. v. State Farm Fire and Cas. Co.*, 222 F.3d 660, 664 (9th Cir. 2000), the Ninth Circuit clearly explained that "in California, 'negligence is not among the theories of recovery generally available against insurers.'" *Id.* (citing *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 254 (1999)).

The remaining distinctions raised by Plaintiffs with respect to the other cases cited by Defendants, which clearly show that NIED is not available against insurers based on negligent claims handling, are unpersuasive. Accordingly, Defendants' motion is granted as to the NIED claim and this claim is dismissed with prejudice.

### 3. Alter Ego

As in their first motion to dismiss, Defendants again question the sufficiency of Plaintiffs' alter ego allegations as a basis for including Hartford, the parent company, as a defendant in this suit when Hartford was not in privity of contract with the Insureds.

Plaintiffs cast this argument as a "second bite at the apple" and urge the Court to deny Defendants' request for the Court to reconsider its earlier ruling.

A review of the record demonstrates that the Court did not address Defendants' alter ego arguments in its order denying the first motion to dismiss. Because the arguments are well taken, and because they are raised with respect to Plaintiffs' amended pleading, rather than the pleading previously

considered by the Court, the Court rules on this question now.

In order to allege alter ego between a parent and subsidiary, the party seeking to disregard the corporate entity must allege: (1) unity of interest such that separate corporate personalities no longer exist, or have been merged, "so that one corporation is a mere adjunct of the other or the two companies form a single enterprise;" and (2) inequitable results will follow if the corporations are separately recognized. Cal. Jur. Corporations § 28 (citing *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court (Parsons Corp.)*, 60 Cal. App. 4th 248 (1997); *Tran v. Farmers Group, Inc.*, 104 Cal. App. 4th 1202 (2002), as modified on denial of reh'g, (Jan. 27, 2003) and review denied, (Mar. 26, 2003)).

The FAC contains factual allegations in support of the first element, unity of interest. (FAC ¶ 20.) However, the FAC does not contain any factual allegations alleging that an inequitable result will follow if Hartford is recognized separately from Twin City. The paragraphs cited by Plaintiffs in opposition are insufficient. *See* FAC ¶ 19 (conclusory allegation regarding alter ego and agency), ¶¶ 24-25 (alleging facts speaking to unity of interest, but failing to address second element).

Accordingly, the Court finds Plaintiffs' alter ego allegations insufficient. Because it is likely this pleading defect may be cured by amendment, the Court grants Plaintiffs 15 days leave to amend.

### B. Motion to Bifurcate

Defendants seek an order bifurcating for discovery and trial the issues of (1) whether the D&O Policy provides coverage from (2) whether Defendants acted in bad faith and/or caused emotional distress to the Insureds. Defendants argue that the breach of contract claim is potentially dispositive of the entire case and it will be decided by the Court, bifurcation will promote judicial economy and convenience, and bifurcation will avoid juror confusion and prejudice. Defendants also contend that bifurcation of punitive damages is mandatory upon a defendant's motion under California Civil Code § 3294. Defendants further request bifurcation on the issue of *Brandt* attorneys' fees.

Plaintiffs oppose, arguing that the issues of coverage and bad faith are factually and legally intertwined, a single phase of discovery and trial will promote judicial economy, and they will be prejudiced by bifurcation.

Under Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). While bifurcation may create a more convenient situation for Defendants, the Court disagrees that bifurcation would be more convenient for either the Court or Plaintiffs. Defendants have also not shown they will be prejudiced if the case is not bifurcated. Moreover, the Court finds that in this case, bifurcation would detract from the dual goals of expediency

and judicial economy. While the coverage issue may be resolved by the Court as early as the motion for summary judgment stage, the *possibility* that Defendants will prevail at this stage is insufficient to delay and protract this litigation, especially in light of the overlapping legal and factual issues underlying both the breach of contract and bad faith claims.

Defendants' citation to Cal. Civ. Code § 3294 is unavailing. Section 3294 pertains to the availability of punitive damages generally. To the extent Defendants may wish to rely on § 3295(d), it does not compel bifurcating the punitive damages claim on Defendants' motion. Instead, § 3295(d) provides for excluding evidence of a defendant's profits or financial condition until after a jury has rendered a verdict in the plaintiff's favor and made a finding of malice, oppression, or fraud. Such evidence is then admissible. This statute in no way mandates bifurcation of the question of punitive damages on a motion by Defendants.

Accordingly, Defendants' motion is DENIED.

### C. Motion for Protective Order

Defendants move for a protective order regarding the deposition of Aaron Goldstein pursuant to Federal Rule of Civil Procedure 26(c). Mr. Goldstein is the Vice President of Claims at Hartford Financial Products. Defendants argue that Plaintiffs fail to show that Mr. Goldstein has unique personal knowledge of the facts relevant to the case, or that the desired evidence cannot be obtained through less intrusive means (e.g., written deposition, depositions of other employees).

Plaintiffs oppose on the grounds that Mr. Goldstein is not an apex witness.

"A party seeking to prevent a deposition carries a heavy burden to show why discovery should not be denied, however, courts are sometimes willing to protect high level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive." *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277 at *3 n.3 (N.D. Cal. Sept. 6, 2006) (internal quotation marks and citation omitted).

The motion is denied because Defendants have not demonstrated that Mr. Goldstein is a high level corporate officer at the apex of *their* organization, let alone that he lacks first-hand knowledge regarding the dispute. To the contrary, Defendants admit that he has first-hand knowledge. (Joint Stip. at 16:19-22.) Defendants' arguments in support of the protective order are based on the assumption that Mr. Goldstein is an apex witness. However, no showing has been made to explain Mr. Goldstein's role in the organization. The Court will not infer that he is an apex witness based solely on his title as Vice President of Claims. This is insufficient to carry the heavy burden of preventing a deposition.

Accordingly, Defendants' motion is DENIED.

### IV.   DISPOSITION

For the reasons set forth above, Defendants' motion to dismiss is DENIED with respect to the bad faith claim (third cause of action), and GRANTED with respect to the NIED claim (sixth cause of action) and alter ego allegations.  The NIED claim is dismissed with prejudice and Plaintiffs are granted 15 days leave to amend the alter ego allegations.  Defendants' motion to bifurcate is DENIED.  Defendants' motion for protective order is also DENIED.

The Clerk shall serve a copy of this minute order on counsel for all parties in this action.