O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **MICHAEL J. DOBSON et al.,** <br><br>            **Plaintiffs,** <br><br>     **vs.** <br><br> **TWIN CITY FIRE INSURANCE COMPANY et al.,** <br><br>            **Defendants.** | **Case No.: SACV 11-0192 DOC(MLGx)** <br><br><br> **ORDER:** <br>  **1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 111]** <br>  **2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 116]** |

        Before the Court are two motions: (1) Motion for Summary Judgment (Dkt. 111) filed by Defendants Twin City Fire Insurance Company and The Hartford Financial Services Group Inc.; and (2) Partial Motion for Summary Judgment As to Duty to Advance Defense Costs (Dkt. 116) filed by Plaintiffs Ironshore Indemnity Inc., Allen Braun, Michael J. Dobson, and Richard D. Teasta.  For the foregoing reasons, the Court GRANTS Insurer Defendants summary judgment as to all claims (Dkt. 111) and DENIES Plaintiffs' partial motion for summary judgment (Dkt. 116).

## I.      Background

As the Court noted in a prior order, the parties' failure to properly record documents on the electronic docket or to properly file or lodge chambers copies has made locating the relevant documents in this case extremely difficult.  *See* May 22, 2012, Minute Order (Dkt. 141).  Nonetheless, after a Herculean effort, the Court concludes that the following facts are undisputed unless otherwise stated.

### a.  The Parties and the Second Amended Complaint ("SAC")

Plaintiffs Allen Braun, Michael J. Dobson, and Richard D. Teasta ("Individual Insured Plaintiffs") are insureds of Plaintiff Ironshore Indemnity Inc. ("Insurer Plaintiff") (collectively, "Plaintiffs").  On December 27, 2011, Plaintiffs filed their Second Amended Complaint ("SAC"), which is the operative pleading in this case, against Defendants Twin City Fire Insurance Company and The Hartford Financial Services Group Inc. (collectively, "Insurer Defendants").

The gravamen of the Plaintiffs' claims is that an insurance policy required Insurer Defendants to pay settlement costs and defense costs to Individual Insured Plaintiffs in underlying litigation and, when Insurer Defendants failed to do so, Insurer Plaintiff paid instead.  Insurer Plaintiff brings as assignee of the Individual Plaintiffs a First Claim for breach of contract for failure to pay defense costs (SAC ¶¶ 104-09) and Second Claim for breach of contract for failure to indemnify (SAC ¶¶ 110-15).  Insurer Plaintiff also brings a Fourth Claim for Subrogation (SAC ¶¶ 127-28).  All Plaintiffs bring a Third Claim for breach of the implied covenant of good faith and fair dealing (SAC ¶¶ 116-26) and Fifth Claim for declaratory relief as to the rights and responsibilities of the parties (SAC ¶¶ 129-32).[1]

---

[1] The Court capitalizes the word "Claim" when referring to Claims brought in the *underlying action against the Individual Insured Plaintiffs* that allegedly are covered by the Policy.  The Court either does not use capitalization or uses a number with a capitalization (e.g. "Fourth Claim for Subrogation") when referring to the claims in the *Second Amended Complaint against Insurer Defendants* that comprise the present action.

### b.  The Policy

Defendant Twin City Fire Insurance Company issued an insurance policy, Private Choice Encore!! Policy, No. 00 BK 0256868-09 ("Policy"), to the company EZ Lube LLC for the Policy Period of April 22, 2009 to September 22, 2010.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 1.  This Policy contained the following relevant language.

### i.  Covered Claim

The Policy states: "Insurer shall pay Loss on behalf of the Insured Persons resulting from an Insured Person Claim first made against the Insured Person during the Policy Period . . . for a Wrongful Act by the Insured Persons . . . ."  *See* Defs.' Response (Dkt. 129) at ¶ 18.  "Loss means the amount the Insureds are legally obligated to pay solely as a result of a Claim covered by this [Policy], including Defense Costs . . . settlement amounts . . . ."  *See* Defs.' Response (Dkt. 129) at ¶ 24.  The Policy defines "Defense costs" as "reasonable and necessary legal fees and expenses incurred in the investigation, defense or appeal of a Claim."  *Id.* at ¶ 25.

### ii.  Allocation Provision

The part of the Policy referred to by both parties as the "Allocation Provision" states: "[w]hen Insureds . . . incur an amount consisting of both Loss that is covered by this Policy and also loss that is not covered by this Policy because such Claim includes both covered and uncovered matters or covered and uncovered parties, then Loss shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 7.

### iii.  No-Voluntary-Payment Provision

The part of the Policy referred to by this Court as the "no-voluntary-payment provision" states:  "Insureds shall not . . . enter into any settlement agreement . . . or incur any Defense Costs regarding any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld.  The Insurer shall not be liable for any . . . settlement . . . or Defense Costs to which it has not consented."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 3.

### c.  EZ Lube Bankruptcy and Creditors' Committee letter

EZ Lube filed for reorganization pursuant to Chapter 11 of the Bankruptcy Code on December 9, 2008, in an action entitled *In Re EZ Lube, LLC et al., Debtors*, bearing Chapter 11 Case No. 08-13256 (hereafter the "Bankruptcy Action").  Defs. Response (Dkt. 129) at ¶ 1.  The Official Committee of Unsecured Creditors ("Creditors Committee") filed a motion in the Bankruptcy Action to pursue claims on behalf of the debtor's estate.  *Id.* at ¶ 2.   On November 5, 2009, counsel for Individual Insured Plaintiffs forwarded to Insurer Defendants a letter from the Creditors Committee demanding $9.5 million that the Individual Insured Plaintiffs acquired in fraudulent transfers; the letter is one of multiple Exhibit Ks attached to one of multiple Sturmer Declarations.  The specific Exhibit K identified at oral argument states that the Individual Insured Plaintiffs "received cash and benefits aggregating at least $62 million in the LBO transaction" and that the Creditors Committee is "offer[ing] to settle all of the claims against the Defendants relating to the 2005 LBO for the sum of $9.5 million."  Sturmer Decl. (Dkt. 118-1) Ex. K.

### d.  Underlying *Invotex* Action

On August 6, 2010, the Creditor Committee's trustee, Invotex Inc., sued Individual Plaintiffs Allen Braun, Michael J. Dobson, and Richard D. Teasta in *Invotex Inc. v. EZL-I Investments Inc. et al*.  *See* Economou Decl. (Dkt. 114) Ex 3 (*Invotex* Complaint); Defs. Response (Dkt. 129) at ¶ 23; *Invotex* Compl. (CV 10-1189 Dkt. 1).  The *Invotex* Complaint contained eleven Claims.  *See* Economou Decl. (Dkt. 114) Ex 3 at 1.  The first ten Claims are for various acts of fraud.  *See id.* at 22 (Count I "Actual Fraud"), 25 ( Count II "Constructive Fraud"), 27 (Count III "Actual Fraud"), 29 (Count VI "Constructive Fraud"), 31 (Count V "Actual Fraud"), 33 (Count VI "Constructive Fraud"), 34 (Count VII "Actual Fraud"), 36 (Count VIII "Constructive Fraud"), 38 (Count IX "Actual Fraud"), 39 (Count X "Constructive Fraud").

The Prayer for Relief in the *Invotex* Complaint states that these ten Claims collectively seek "to recover the $26,668,831 payment . . . made to" Individual Insured Plaintiffs and "to recover the payment" of additional millions of dollars and property "fraudulently . . . transferred" to Individual Insured Plaintiffs.  *See* Economou Decl. (Dkt. 114) Ex 3 at 45-46

(Counts I and II seek "to recover the $26,668,831 payment . . . made to" Individual Insured Plaintiffs and Counts II, IV, V, VI, VII, VIII, IX, and X seek "to recover the payment" of additional millions of dollars and property "fraudulently . . . transferred" to Individual Insured Plaintiffs).

The eleventh Claim is styled as "breach of fiduciary duty."  *See id.* at ¶¶ 272-95.  This breach of fiduciary Claim alleges that the Individual Insured Plaintiffs: (1) engaged in the LBO transaction "for their own pecuniary gain"; (2) "caus[ed] EZ Lube to cancel and forgive loans due and owing from [the Insureds] personally"; (3) "accept[ed] fraudulent transfers"; and (4) "caus[ed] EZ Lube to pay a pre-payment penalty of nearly $1.4 million for no reason whatsoever."[2]  *Id.* at ¶¶ 65, 277, 285-88.  The Prayer for Relief in the *Invotex* Complaint states that this eleventh Claim seeks "an amount . . . based on the harm to the Debtors' unsecured creditors as a result of [the Individual Insured Plaintiffs'] breaches of fiduciary duties."  *Id.* at 46:10-12 (Prayer for Relief for Count XI).

### e.  Insurer Defendants and Individual Insured Plaintiffs' Correspondence Regarding the Underlying *Invotex* Action

In August 2010, the Individual Insured Plaintiffs gave "notice of the Invotex Action" to Insurer Defendants.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 31.  On October 5, 2010, Insurer Defendants advised the Individual Insured Plaintiffs by letter that the Underlying *Invotex* Action was not covered by the Policy.  *Id.* at ¶ 31.  However, after reserving its rights, Insurer Defendants agreed to "advance ten percent (10%) of the reasonable covered Defense Costs" and "subject to the satisfaction of the retention," which was $75,000.  *Id.*

After the October 5, 2010, discussion, the Insurer Defendants and Individual Insured Plaintiffs exchanged numerous letters.  *Id.* at ¶ 36.  On January 27, 2011—five days before

---

[2] This allegation appears to be repeated in the complaint as follows: "[a]s part of the LBO transaction, the proceeds from the Financing were used to pay Oldco's prior secured debt to GSSLG . . . which included a prepayment fee of $1,380,000."  Economou Decl. (Dkt. 114) Ex 3 at ¶ 65.

filing the present case against Insurer Defendants—the Individual Insured Plaintiffs requested that the Insurer Defendants "immediately reimburse 55% of defense costs going forward" and "agree to fund 55% of a $4.6 million settlement demand made by [the third-party complainant] in the *Invotex* matter." *See* Economou Decl. (Dkt. 114) Ex 39 at 1; Compl. (Dkt. 1) (filed February 2, 2011).[3]

On May 26, 2011, shortly after this Court denied a motion to dismiss, the Insurer Defendants and Individual Insured Plaintiffs had a meeting in which the Insurer Defendants offered to contribute $750,000 toward any settlement of the Underlying *Invotex* Action.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 45; April 14, 2011, Minute Order (Dkt. 27).  At that meeting, the Insurer Defendants also requested to be kept apprised of the settlement negotiations and asked for copies of all invoices.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 45.

After the meeting on May 26, 2011, weeks passed without an update from the Individual Insured Plaintiffs, even though Insurer Defendants reached out to them on several occasions in order to obtain a status report.  *Id.* at ¶ 47.

On July 14, 2011, the Individual Insured Plaintiffs settled the Underlying *Invotex* Action for $3.5 million.  *Id.* at ¶ 51.  None of the Plaintiffs notified Insurer Defendants of the settlement in advance nor requested or received the Insurer Defendants' consent to the settlement.  *Id.* at ¶ 54.

**f.  Absence of Evidence that Individual Insured Plaintiffs Incurred Defense Costs**

Plaintiffs' only evidence of something that could possibly be construed as defense costs in the *Invotex* Action is: (1) Insurer Plaintiff's own memorandum ("May 2011 Memorandum")

---

[3] Although the Individual Insured Plaintiffs dispute the Insurer Defendants' characterization of the letter, they do not dispute the existence or contents of the letter.  *See* Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 37.  Because there is no genuine issue of material fact as to the contents of the letter, the Court quotes the letter itself.

to Lewis Miller, who is the Individual Insured Plaintiffs' attorney, summarizing various invoices by firm name or date; and (2) testimony by the Individual Insured Plaintiffs giving their "best estimate" as to the amounts they paid to defend the *Invotex* Action.  See Sturmer Decl. (Dkt. 120-1) Ex FF at 397 (memorandum dated May 31, 2011); Sturmer Decl. (Dkt. 135-4) Exs. G at (Dobson Depo. 107:8-12, 126:22-127:12), H (Teasta Depo. 43:19-44:5).

As discussed in this Order, the Court concludes that this evidence is inadmissible.

### g.  Insurer Plaintiff Pays Individual Insured Plaintiffs

On May 31, 2011, Insurer Plaintiff transmitted a check for $409,358.94 to Lewis Miller, who is an attorney for Individual Insured Plaintiffs.  *See* Defs.' Response (Dkt. 129) at ¶ 83; Sturmer Decl. (Dkt. 120-1) Ex FF at 397.  Insurer Plaintiff had previously issued to EZ Lube LLC the Policy 00J0H0902001, which is a Side-A Directors and Officers Liability Insurance Policy and for the policy period April 22, 2009 through September 22, 2009.  Defs. Response (Dkt. 129) at ¶ 82.

### h.  Present Motions

The parties have filed cross-motions for summary judgment regarding the SAC's First Claim for breach of contract for failure to pay defense costs and Fourth Claim for subrogation and Defendants has moved for summary judgment regarding the remaining Second, Third, and Fifth Claims in the SAC.  Defendants move for summary judgment on the theory that there was no breach of contract regarding failure to pay settlement or defense costs and that, absent such breaches, there is no liability under the remaining SAC claims. Plaintiffs move for summary judgment on the theory that there was a breach of contract regarding failure to pay defense costs and, as a result of this breach, Insurer Plaintiffs is entitled to subrogation.

### II.   Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The court

must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Celotex*, 477 U.S. at 323.  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case.  *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial.  *See Liberty Lobby*, 477 U.S. at 248-49.  A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ."  *Id.* at 248.  A party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there must be specific, admissible evidence identifying the basis for the dispute.  *Id.*  The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]."  *Liberty Lobby*, 477 U.S. at 252.

### III.   Discussion

Like any contract, a claim for breach of an insurance contract under California law requires the plaintiff to prove: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages.  *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1085 (E.D. Cal. 2010).  Regarding the first and second elements, in "an insurance coverage action, the insured has the burden to prove that the claim falls within the basic scope of coverage."  *Pan Pac. Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 970-71 (9th Cir.

2006); *Collin v. Am. Empire Ins. Co.,* 21 Cal.App.4th 787, 803, 26 Cal.Rptr.2d 391, 398-99
(1994).

    While the parties do not dispute the existence of the insurance contract, they do dispute
that Plaintiffs have established the remaining elements of a breach of contract claim.  First, the
Court analyzes whether any action brought a "Claim" as defined by the Policy.  The Court
concludes that Plaintiffs have failed to establish that their defense costs were covered by the
Policy and thus DENIES Plaintiffs summary judgment as to defense costs; for purposes of
Insurer Defendants' Motion for Summary Judgment, the Court concludes that none of the
Claims in the Creditors Committee letter are covered by the Policy and the vast majority of the
Claims in the Underlying *Invotex* Action are not covered.  Based on this conclusion, the Court
next analyzes whether Plaintiffs have established the elements of: (1) performance or excuse for
nonperformance; and (2) breach.  Because the Court concludes that Plaintiffs have not
established either element, the Court GRANTS Insurer Defendants summary judgment as to all
five SAC claims.

> **a.   Plaintiffs have failed to establish that their defense costs were covered by
> the Policy and Insurer Defendants  have shown that the vast majority of
> Claims are not covered**

    Under California law, in "an insurance coverage action, the insured has the burden to
prove that the claim falls within the basic scope of coverage." *Pan Pac. Retail Properties, Inc.
v. Gulf Ins. Co.*, 471 F.3d 961, 970-71 (9th Cir. 2006).  Where, as here, the insureds "seek
reimbursement after the underlying litigation has settled and no longer need to worry about the
assertion of new types of claims or damages, [the insureds] must show that the expenses at issue
were related to claims that actually fell within the basic scope of coverage." *Id.*

    The tentative opinion observed that Plaintiffs' Motion and Opposition to Insurer
Defendants' Motion provide no analysis as to why *any* Claim falls within *any* Policy provision
and that such analysis is necessary to meet the insured's burden.  *See Raychem Corp. v. Fed. Ins.
Co.*, 853 F. Supp. 1170, 1175 (N.D. Cal. 1994) ("[T]he insured has the burden of proving the
contract of insurance and its terms, as well as the loss."); Dir. & Off. Liab § 12:6 (explaining

that the an insured under a D & O Policy bears the burden to show that: "(1) A 'claim' must
have been made against the insureds during the policy period; (2) the claim must be for a
'wrongful act' committed by the insureds and (3) the insureds must have experienced a 'loss.'").
In response, Plaintiffs at oral argument attempted to remedy this oversight.  While this Court
doubts that the Federal Rules of Civil Procedure permit Plaintiffs to essentially file a new oral
summary judgment motion at oral argument, this Court need not address that issue because
Plaintiffs' oral argument nonetheless fail to persuade this Court on the merits.

### i.  Underlying *Invotex* Action

The Court first analyzes whether the Policy covers any Claims in the Underlying *Invotex*
Action.  The Court analyses whether Plaintiffs have met their burden, as the insured with the
burden to prove coverage, to show on cross-motions for summary judgments that the Policy
covered defense costs incurred in the Underlying *Invotex* Action.  The Court concludes that
Plaintiffs have not met their burden and thus DENIES Plaintiffs summary judgment as to the
SAC's breach of contract claim based on failure to pay defense costs and all SAC claims arising
from this purported breach.

For purposes of Insurer Defendants' Motion for Summary Judgment, the Court analyzes
whether Insurer Defendants have met their burden to show that the Policy excludes coverage for
the Claims.  The Court does not address Insurer Defendants' several arguments that the Policy
excludes all parts of all Claims in the Underlying *Invotex* Action because the Court concludes
that at least some Claims were not covered and this conclusion is sufficient to resolve Plaintiffs'
SAC claims in a later section of this order.

### 1.  Policy coverage

Plaintiffs' Motion asserts, without argument or analysis, that the Policy covers the five
constructive fraud Claims and one breach of fiduciary duty Claim brought in the Underlying
*Invotex* Action.  Pl. Ironshore Mot. (Dkt ) at 16.  At oral argument, Plaintiffs appeared to
abandon their unsupported argument regarding the six constructive fraud Claims.  However,
Plaintiffs did argue that the breach of fiduciary duty Claim is covered by the Policy because the

Policy covers a "wrongful act" by the Individual Insured Plaintiffs and the Policy defines "wrongful act" to include a "breach of duty."  *See* Defs.' Response (Dkt. 129) at ¶ 34.

As Plaintiffs have the burden to prove their SAC claim and have failed to make any argument, the Court DENIES Plaintiffs' summary judgment as to defense costs because Plaintiffs have failed to show that the six claims-at-issue in the Underlying *Invotex* Action satisfy any of the Policy's coverage provisions.  Alternatively, the Court DENIES Plaintiffs' summary judgment as to defense costs because Plaintiffs have failed to offer admissible evidence that they incurred defense costs that constitute a Loss under the Policy.

**a.  Plaintiffs have failed to show that they incurred any Defense Costs that constitute Loss under the Policy**

Plaintiffs make an oblique reference to a Policy definition, the existence of which the Defendants do not dispute, that states "Insurer shall pay Loss on behalf of the Insured Persons resulting from an Insured Person Claim first made against the Insured Person during the Policy Period . . . for a Wrongful Act by the Insured Persons . . . ."  *See* Defs.' Response (Dkt. 129) at ¶ 18.  The parties do not dispute that the Policy states "Loss means the amount the Insureds are legally obligated to pay solely as a result of a Claim covered by this [Policy], including Defense Costs . . . settlement amounts . . . ."  *See* Defs.' Response (Dkt. 129) at ¶ 24.  The parties also do not dispute that the Policy defines "Defense costs" as "reasonable and necessary legal fees and expenses incurred in the investigation, defense or appeal of a Claim."  *Id.* at ¶ 25.

Not only do Plaintiffs fail to show that their purported defense costs fall within these Policy terms, they also fail to show that they ever paid any defense costs.  Plaintiffs' only evidence of something that could possibly be construed as defense costs in the *Invotex* Action is: (1) Insurer Plaintiff's *own* memorandum ("May 2011 Memorandum") to Lewis Miller, who is the Individual Insured Plaintiffs' attorney, *summarizing* various invoices by firm name or date; and (2) testimony by the Individual Insured Plaintiffs giving their "best estimate" as to the amounts they paid to defend the *Invotex* Action.  *See* Sturmer Decl. (Dkt. 120-1) Ex FF at 397 (memorandum dated May 31, 2011); Sturmer Decl. (Dkt. 135-4) Exs. G at (Dobson Depo.

107:8-12, 126:22-127:12), H (Teasta Depo. 43:19-44:5).[4]  The parties do not dispute that Insurer Plaintiff transmitted a check for $409,358.94 to Lewis Miller.  *See* Defs.' Response (Dkt. 129) at ¶ 83; Sturmer Decl. (Dkt. 120-1) Ex FF at 397.

The Insurer Plaintiff has failed to establish that the Individual Insured Plaintiffs incurred any Defense Costs as defined under the Policy because the purported evidence of such costs is excluded under the best evidence rule.  The best evidence rule requires that the "original writing" be introduced "to prove its content."  Fed. R. Evid. 1002; *see also Medina v. Multaler, Inc.*, CV0600107MMMAJWX, 2007 WL 5124009 (C.D. Cal. Feb. 7, 2007) (describing best evidence rule).  Here, the "original writing" is the invoices by the Individual Insured Plaintiffs' attorneys in the Underlying *Invotex* Action and Individual Insured Plaintiffs' payments to those attorneys.  The May 2011 Memorandum and the Individual Insured Plaintiffs' testimony are exactly the kind of self-serving and unreliable statements that the best evidence rule is designed to exclude.  For this reason, courts have excluded similar summaries and surmises.  *See Sylvania Elec. Products, Inc. v. Flanagan*, 352 F.2d 1005, 1007–08 (1st Cir. 1965) (vacating judgment

---

[4] At oral argument, Plaintiffs also contended that an April 7, 2011, letter from Insurer Defendants indicated that Plaintiffs incurred at least $18,000 in covered defense costs.  However, this argument fails because the letter actually says nothing about whether the Underlying *Invotex* Action is covered.  The letter merely says that, "pursuant to [Insurer Defendants'] 15% allocation, it appears that $18,140.36 . . . is applicable towards the $75,000 retention."  *See* Defs.' Response (Dkt. 129) at ¶ 69.  This statement is nothing more than an explanation of how the Insurer Defendants' proposed 15% allocation would work as applied— an allocation that the Individual Insured Plaintiffs rejected.  Furthermore, this statement was made after the Insurer Defendants reserved their rights and thus was not a concession that the $18,140.36 was *actually* covered.  The Individual Insured Plaintiffs can not twist a statement made by a frustrated insurer trying to find some common ground with an insured who is taking an absurd coverage position into a concession that certain defense costs are actually covered by the Policy.

where district court erroneously admitted summary of data in invoices and tally sheets because these summaries were excludable under the best evidence rule absent a showing of unavailability); *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 989 (E.D. Cal. 2003) (excluding "contents of invoices . . . under the best evidence rule").

In sum, the May 2011 Memorandum and the Individual Insured Plaintiffs' testimony are excluded under the best evidence rule and thus Plaintiffs have not met their burden to show the Individual Insured Plaintiffs incurred any defense costs that constitute Loss under the Policy. Accordingly the Court DENIES Plaintiffs' summary judgment as to all SAC claims to the extent they are based on Insurer Defendants' failure to pay defense costs in the Underlying *Invotex* Action.

### b. Defendants have not challenged Plaintiffs' ability to satisfy the Non-Loss provisions in the Policy

Whereas the parties filed cross-motions for summary judgment as to Insurer Defendants' liability for defense costs in the Underlying *Invotex* Action, only Insurer Defendants moved for summary judgment as to their liability for settlement costs in the Underlying *Invotex* Action. However, Defendants have not identified Plaintiffs' failure to produce evidence of amounts paid in settlement as a basis for granting Defendants' Motion.  In addition, other than disputing Plaintiffs' evidence regarding defense costs, Defendants have not challenged Plaintiffs' ability to show that the six claims-at-issue in the Underlying *Invotex* Action satisfy the Policy's coverage provisions; instead, Defendants rely on the Policy's exclusions.[5]

---

[5] For example, the parties do not dispute that a Policy provision states "Insurer shall pay Loss on behalf of the Insured Persons resulting from an Insured Person Claim first made against the Insured Person during the Policy Period . . . for a Wrongful Act by the Insured Persons . . . ." *See* Defs.' Response (Dkt. 129) at ¶ 18.  While Plaintiff references this provision and the Policy's definitions of Insured Persons and Insured Person Claim, and Wrongful Act, Plaintiff

Accordingly, the Court will simply assume without deciding that Plaintiffs have produced evidence that they paid a settlement that constitutes a Loss under the Policy and that the six claims-at-issue in the Underlying *Invotex* Action satisfy the Policies coverage provisions.

### c.  Conclusion

In sum, because Plaintiffs have not produced admissible evidence that the Individual Insured Plaintiffs actually incurred any defense costs that constitute a Loss under the Policy, the Court DENIES Plaintiffs' summary judgment as to the SAC's First Claim for breach of contract based on failure to pay defense costs and all SAC claims arising from this purported breach. Alternatively, the Court DENIES Plaintiffs' summary judgment as to the defense costs because Plaintiffs have failed to show that the six claims-at-issue in the Underlying *Invotex* Action satisfy any of the Policy's coverage provisions.  Having denied Plaintiffs' summary judgment as to defense costs, the Court proceeds to analyze whether Insured Defendants are entitled to summary judgment as to all Claims in the Underlying *Invotex* Action.

### 2.  Policy exclusions

Under California law, the "insurer bears the burden of proving . . . the applicability of an exclusion." *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir. 1989).  Where the exclusion is not in the contract, but rather imposed as a matter of public policy, the insurer also has the "burden of proving that the requested claims are matters 'uninsurable under the law.'" *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006).

### a.  Public policy exclusion for claims seeking restitution

As a matter of public policy, "California case law precludes indemnification and reimbursement of claims that seek the restitution." *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (9th Cir. 2006) (applying California law to D & O policy); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1268, 833 P.2d 545, 554 (1992); Cal. Prac. Guide Ins. Lit. Ch. 7F-C § 7:1650.1 ("Even in the absence of . . . an exclusion, coverage may be barred

---

makes no argument that the six claims-at-issue in the Underlying *Invotex* Action actually satisfy these definitions.

as a matter of *public policy*.").  In the insurance context, "restitution" is defined as that which the insured: (1) "wrongfully acquired"; and (2) "is required to restore to" the third-party complainant in the suit against the insured.  *Bank of the West*, 2 Cal. 4th at 1268 (noting that "'restitution' may have a broader meaning in other contexts"); *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 825, 799 P.2d 1253, 1266 (1990) (explaining that the distinctions between equitable and legal restitution "under federal law is not dispositive of the proper construction of insurance policies under state law").  The underlying complaint's "label of 'restitution' or 'damages' does not dictate whether a loss is insurable"; rather, the inquiry turns on whether the claim seeks something that the insured "wrongfully acquired."  *Unified W. Grocers*, 457 F.3d at 1115.

At least part of the breach of fiduciary Claim seeks restitution for purposes of the California insurance law because the *Invotex* Complaint alleges that the Individual Insured Plaintiffs wrongly acquired funds and seeks the return of those funds.  The Individual Insured Plaintiffs' acquiring of funds is shown by the allegations ("Restitution Allegations") in the breach of fiduciary Claim that the Individual Insured Plaintiffs: (1) engaged in the LBO transaction "for their own pecuniary gain"; (2) "caus[ed] EZ Lube to cancel and forgive loans due and owing from [the Insureds] personally"; and (3) "accept[ed] fraudulent transfers." Economou Decl. (Dkt. 114) Ex 3 at ¶¶ 275-77.  The *Invotex* complainant's desire to have these funds restored to it is shown by the part of the Prayer for Relief that seeks "an amount . . . based on the harm to the Debtors' unsecured creditors as a result of [the Individual Insured Plaintiffs'] breaches of fiduciary duties."  Economou Decl. (Dkt. 114) Ex 3 at 46:10-12 (Prayer for Relief for Count XI).  Thus, the *Invotex* Complaint Count XI seeks restitution because it alleges that the Individual Insured Plaintiffs wrongly acquired funds and seeks the return of those funds.  *See In re TransTexas Gas Corp.*, 597 F.3d 298, 309 (5th Cir. 2010) (applying Texas law to hold that D & O Policy did not cover liquidating trustee's claim against executive because claims sought $2 million in severance payments to executive from his company and settlement payments were uninsurable restitution); *Level 3 Communications, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910-11 (7th Cir. 2001) (citing California cases favorably to hold that D & O Policy did not cover claims

against executive because the settlement sought to "deprive the [insured] of the net benefit of the
unlawful act" and thus settlement payments were uninsurable restitution).

Similarly, all ten Claims that are not the breach of fiduciary duty Claim seek restitution
for purposes of the California insurance law because the *Invotex* Complaint alleges that the
Individual Insured Plaintiffs wrongly acquired funds and seeks the return of those funds.  *See
e.g.*, Economou Decl. (Dkt. 114) Ex 3 at 45-46 (Prayer for Relief stating that Counts I and II
seek "to recover the $26,668,831 payment . . . made to" Individual Insured Plaintiffs and Counts
II, IV, V, VI, VII, VIII, IX, and X seek "to recover the payment" of additional millions of
dollars and property "transferred" to Individual Insured Plaintiffs).  In their opposition, Plaintiffs
baldly assert that at least the five "constructive fraud" Claims are covered because they are
constructive fraud, without citation to case law or the *Invotex* Complaint.  Pl. Ironshore Mot.
(Dkt 116) at 16.  This failure to make any legally cognizable argument is insufficient to deny
Insurer Defendants summary judgment.  Furthermore, it is of no consequence if recovery of the
alleged fraudulent transfers was based on the counts for actual fraud or constructive fraud; the
inquiry turns on whether the claim seeks something that the insured "wrongfully acquired."
*Unified W. Grocers*, 457 F.3d at 1115; *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*,
No. 07-12706, 2008 WL 3823898, *223 (11th Cir. Aug. 18, 2008) (holding that claim was
excluded under policy because claim sought restitution and rejecting insured's argument that
"without a finding of fraud, it is impossible to conclude that the money was wrongly-acquired").

As noted in this Court's tentative order, Plaintiffs' briefs did not engage in actual text of
the *Invotex* Complaint.  For the first time at oral argument, however, Plaintiffs identified the
specific pleadings in the *Invotex* Complaint that they believed were non-restitution, namely, the
allegations that the Individual Insured Plaintiffs "caus[ed] EZ Lube to pay a pre-payment
penalty of nearly $1.4 million for no reason whatsoever."[6]  *Id.* at ¶¶ 65, 277, 285-88.  Even

---

[6] This allegation appears to be repeated in the complaint as follows: "[a]s part of the LBO
transaction, the proceeds from the Financing were used to pay Oldco's prior secured debt to

assuming that Plaintiff has identified some non-restitutionary remedies in the *Invotex* Complaint, however, the Court need not address this argument because the Court grants summary judgment to the Insurer Defendants on the alternative ground that Plaintiffs have failed to show breach of the contract.[7]

In sum, the Court concludes that the public policy exclusion for claims seeking restitution excludes coverage for all ten fraud Claims in the *Invotex* Complaint (Counts I – X), as well as the breach of fiduciary Claim (Count XI) to the extent it is based on the Restitution Allegations.

**b. The Court need not address Insurer Defendants' arguments regarding other coverage exclusions**

Insurer Defendants contend that there are several other exceptions that negate all coverage for the entire Underlying *Invotex* Action.  However, the Court need not address these arguments because the Court grants summary judgment to the Insurer Defendants on the alternative ground that Plaintiffs have failed to show breach of contract.[8]

**c. The Court need not address Insurer Defendants' argument regarding a condition precedent to performance**

---

GSSLG . . . which included a prepayment fee of $1,380,000."  Economou Decl. (Dkt. 114) Ex 3 at ¶ 65.

[7] At oral argument, Plaintiffs also argued that the eleventh claim for breach of fiduciary duty sought "$5 million paid to Braun" and that such payment, if it was sought from the other Individual Insured Defendants, was not restitution.  This Court has once again reviewed the *Invotex* Complaint and can not find a $5 million payment to Braun.  As Plaintiffs did not cite to the record nor make this argument in their briefs, the Court can not credit Plaintiffs' unsupported argument.

[8] Insurer Defendants argue that the following exclusions each bar coverage: "Prior Notice Exclusion," "Claim First Made Exclusion," "Insured v. Insured Exclusion."

Insurer Defendants also contend that, even if the Policy required them to perform because a Claim was covered, a condition precedent to such performance was not met because the Individual Insured Plaintiffs never paid a $75,000 retention.  However, the Court need not address this argument because the Court grants summary judgment to the Insurer Defendants on the alternative ground that Plaintiffs have failed to show breach of the contract.

### ii.   Creditors' Committee letter

Plaintiffs Motion argues that the Policy covers the Creditor Committee's November 5, 2009, letter demanding $9.5 million that the Individual Insured Plaintiffs acquired in fraudulent transfers.  The sole basis for Plaintiffs' argument is this letter, which Plaintiffs described in its briefs as "Exhibit K" attached to the Sturmer Declaration.  In the Court's tentative order, the Court explained that multiple members of the Court's staff attempted to find the "Exhibit K" attached to the Sturmer Declaration, but that both the chambers copy and the docket have a tab labeled Exhibit K without any document after the tab, and the Insurer Defendants have not stipulated to the contents of Exhibit K.  *See* Sturmer Decl. (Dkt. 138-1) Ex K.  At oral argument, Plaintiffs explained that they were referring to a different "Exhibit K" attached to a different Sturmer Declaration.  *See* Sturmer Decl. (Dkt. 118-1) Ex. K.

The Exhibit K identified at oral argument is, indeed, a letter from the Creditor Committee dated November 5, 2009, seeking $9.5 million.  However, the letter also states that the Individual Insured Plaintiffs "received cash and benefits aggregating at least $62 million in the LBO transaction" and that the Creditors Committee is "offer[ing] to settle all of the claims against the Defendants relating to the 2005 LBO for the sum of $9.5 million."  Sturmer Decl. (Dkt. 118-1) Ex. K.  Thus, as Insurer Defendants argue, the letter clearly indicates that the amount sought is entirely restitution.  As discussed in the previous section regarding the *Invotex* Action, such restitution is uninsurable.

Accordingly, the Court GRANTS summary judgment to Insurer Defendants to the extent that the SAC's claims are based on any demands by the Creditors' Committee.

### iii.   Conclusion

In sum, the Court GRANTS Insurer Defendants summary judgment to the extent that the SAC's claims are based on any demands by the Creditors' Committee.  The Court DENIES Plaintiffs summary judgment as to the SAC's breach of contract claim based on failure to pay defense costs and all SAC claims arising from this purported breach.  Alternatively, the Court DENIES Plaintiffs summary judgment as to defense costs because Plaintiffs have failed to offer admissible evidence that they incurred defense costs that constitute a Loss under the Policy. Finally, for purposes of Insurer Defendants' Motion for Summary Judgment, the Court concludes that at least some Claims in the Underlying *Invotex* Action were not covered.

> **b.  Even assuming that part of a Claim was covered, Plaintiffs have failed to show that the Insurer Defendants materially breached the insurance contract prior to the Individual Insured Plaintiffs' material breach**

Like any contract, a claim for a breach of an insurance contract requires the plaintiff to prove both "plaintiff's performance or excuse for nonperformance of the contract" and "defendant's breach of the contract."  *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1085 (E.D. Cal. 2010).  Insurer Defendants contend that, even if part of a Claim was covered, the Individual Insured Plaintiffs' settlement of the Underlying *Invotex* Action without Insurer Defendants' consent was non-performance under the contract.  Plaintiffs respond that, even if the Individual Insured Plaintiffs' settlement is non-performance, this non-performance is excused because Insurer Defendants breached the contract prior to the settlement by failing to pay any of the Individual Insured Plaintiffs' defense costs.  Plaintiffs have failed to show that their non-performance is excused because they have failed to show that Insurer Defendants breached the contract *prior* to Individual Insurer Plaintiffs' non-performance. Because Plaintiff has failed to show excuse for its non-performance or Insurer Defendants' breach, the Court GRANTS summary judgment to the Insurer Defendants.

> **1.  Plaintiffs did not perform under the contract because they settled the Underlying *Invotex* Action without Insurer Defendants' consent**

Individual Insured Plaintiffs did not perform under the contract because they settled the Underlying *Invotex* Action without Insurer Defendants' consent.

### a. Scope of No-Voluntary-Payment provision

The Policy states: "Insureds shall not . . . enter into any settlement agreement . . . or incur any Defense Costs regarding any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld.  The Insurer shall not be liable for any . . . settlement, or Defense Costs to which it has not consented."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 3.

California courts and the Ninth Circuit hold that this type of clause in an insurance contract, which is commonly refer to as a "no-voluntary-payments" clause, is clear and unambiguous.  *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1086 (E.D. Cal. 2010) (citing several cases for the "well settled rule that no-voluntary-payments provisions are enforceable under California law.");  *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145-46 (9th Cir. 2008) (holding that policy provision that insured would "not voluntarily make payments, assume obligations or incur expenses, except at [insured's] own cost" was "clear and unambiguous" under California law).

### b. Defendants have met their summary judgment burden to show that Individual Insured Plaintiffs failed to show performance

The parties do not dispute that, on July 14, 2011, the Individual Insured Plaintiffs settled the Underlying *Invotex* Action for $3.5 million.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 51.  The parties also do not dispute that none of the Plaintiffs notified Insurer Defendants of the settlement in advance nor requested or received the Insurer Defendants' consent to the settlement.  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 54.

Insurer Defendants contend and the Court agrees that Individual Insured Plaintiffs' settlement without Insurer Defendants' consent constitutes non-performance.  The Policy unambiguously bars the Individual Insured Plaintiffs from "enter[ing] into any settlement agreement . . . regarding any Claim without the prior written consent of the Insurer" and states

that the "Insurer shall not be liable for any . . . settlement . . . to which it has not consented."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 3.  Individual Insured Plaintiffs failed to perform because they did exactly that which the Policy said they could not; they settled without Insurer Defendants' consent.  *See e.g., Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1546, 2 Cal. Rptr. 3d 761, 772 (2003); *Crowley Mar. Corp. v. Fed. Ins. Co.*, C 08-00830 SI, 2008 WL 5071118, *1, *2-4, *8-9  (N.D. Cal. Dec. 1, 2008) (holding that defendants were not liable for insured's settlement under no-voluntary-payments clause almost identical to the present case where insurer accepted coverage on June 27, 2005, insured began settlement negotiations in December 2006 and signed a settlement agreement on March 19, 2007, that was not approved by a court until April 27, 2007, because insured did not notify insurer of settlement until March 22, 2007 nor seek its consent until March 28, 2007).

Thus, Insurer Defendants have met their burden at summary judgment to show that Plaintiffs have failed to establish that the Individual Insured Plaintiffs performed under the no-voluntary-payment provision in the Policy.  Thus, the burden shifts to Plaintiff to show that performance is excused.

## 2.   Plaintiffs have failed to show either that non-performance was excused or that Insurer Defendants breached

"California law enforces . . . no voluntary payments provisions in the absence of . . . insurer breach." *Low v. Golden Eagle Ins. Co.*, 110 Cal. App. 4th 1532, 1544, 2 Cal. Rptr. 3d 761, 770 (2003); *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1086 (E.D. Cal. 2010) (citing several cases for the "well settled rule that no-voluntary-payments provisions are enforceable under California law.").  Plaintiffs argue that the Individual Insured Plaintiffs' settlement is excused because Insurer Defendants breached the contract prior to the settlement by failing to pay any of the Individual Insured Plaintiffs' defense costs.  Specifically, Plaintiffs contend that this court should apply a default rule requiring an insurer to advance 100% of defense costs where there is any potential that any part of a claim is covered.  Insurer Defendants counter that the Policy's "Allocation Provision" contracts around this default rule to require Insurer Defendants to pay only for those claims that are covered.  Because Plaintiffs

have failed to show that they were entitled to 100% of defense costs at the time Individual

Insured Plaintiffs settled, Plaintiffs have failed to show that Insurer Defendants breached prior to

the settlement.  Because Plaintiffs have failed to show that Insurer Defendants breached,

Plaintiffs have failed to show that their non-performance under the contract is excused.

Accordingly, the Court GRANTS summary judgment to Insurer Defendants.

The part of the Policy referred to by both parties as the "Allocation Provision" states

"[w]hen Insureds . . . incur an amount consisting of both Loss that is covered by this Policy and

also loss that is not covered by this Policy because such Claim includes both covered and

uncovered matters or covered and uncovered parties, then Loss shall be allocated between

covered Loss and non-covered loss based upon the relative legal exposure of all parties to such

matters."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 7.

Plaintiffs argue that, in the absence of policy language to the contrary, the default rule in

California is that an insurer "must pay all legal expenses as incurred" by the insured if

"apportionment between covered and uncovered claims and persons is not yet feasible."  *Gon v.*

*First State Ins. Co.*, 871 F.2d 863, 869 (9th Cir. 1989).  Apportionment is not feasible "where

the nature of the claims made in the complaint do not clearly indicate whether they would be

covered or uncovered," for example, if "an alleged act would be covered under the policy if the

act were committed negligently, but would not be covered if it were committed intentionally."

*Id.* at 868.  However, as Plaintiffs concede, "parties may 'contract out' of the default rule of

contemporaneous payment of defense costs."  *Commercial Capital Bankcorp. Inc. v. St. Paul*

*Mercury Ins. Co.*, 419 F. Supp. 2d 1173, 1181 (C.D. Cal. 2006).

Here, the Policy expressly contracts out of the default rule by providing that "Loss shall

be allocated between covered Loss and non-covered loss."  Pl. Ironshore's Statement of Genuine

Dispute (Dkt. 139) at ¶ 7.  Indeed, courts have held that the parties have contracted out of the

default rule and held that the policy entitled the insurer to allocate defense costs where, like in

the "Allocation Provision," the policy states that costs will be allocated.  *Compare id. with*

*Commercial Capital*, 419 F. Supp. 2d at 1177, 179-80 (holding that insurer was entitled to

allocate defense costs because policy language contracted out of the default rule where policy

stated "If there can be an agreement on an allocation of Defense Costs, the Insurer shall advance on a current basis Defense Costs allocated to covered Loss. If there can be no agreement on an allocation of Defense Costs, the Insurer shall advance on a current basis Defense Costs which the Insurer believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined"); *Pan Pac. Retail Properties, Inc. v. Gulf Ins. Co.*, CIV.03-CV-679 WQH, 2004 WL 2958479 (S.D. Cal. July 14, 2004) (holding that insurer was entitled to allocate defense costs because policy language contracted out of the default rule where policy stated "Insurer shall advance on a current basis Defense Costs which the Insurer in its discretion believes to be covered under this Policy") *reversed in part on other grounds by* 471 F.3d 961, 974 n.9 (9th Cir. 2006) (noting that insureds "do not challenge the district court's finding that the insurers were not required to advance defense costs"); *Clifford Chance Ltd. Liab. P'ship v. Indian Harbor Ins. Co.*, 14 Misc. 3d 1209(A), 836 N.Y.S.2d 484 (Sup. Ct. 2006) (holding that insurer was entitled to allocate defense costs because policy language contracted out of the default rule where policy stated "the insured and insurer will use their best efforts to determine a fair and appropriate allocation of Loss between that portion of Loss that is covered under the Policy and that portion of Loss that is not covered under this Policy") *aff'd* 41 A.D.3d 214, 838 N.Y.S.2d 62 (2007) ("In light of the clear allocation provision in the policy, which had the effect of a partial exclusion . . . the insurer is only required to pay a portion of its insured's claim for reimbursement.").

Plaintiffs argue that the Policy does not sufficiently contract out of the default rule because, unlike the cases cited above, the Policy does not expressly provide *who* can decide the appropriate allocation if the parties dispute the allocation. It is true that these cases provide for such a contingency. *See e.g., Commercial Capital Bankcorp. Inc. v. St. Paul Mercury Ins. Co.*, 419 F. Supp. 2d 1173, 179-80 (C.D. Cal. 2006) (policy states "[i]f there can be no agreement on an allocation of Defense Costs, the Insurer shall advance on a current basis Defense Costs which the Insurer believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined."). However, Plaintiffs' argument assumes that the omission of a contingency should result in the Allocation Provision having no effect in the event of such a

contingency occurring.  Plaintiff cites no authority for this nonsensical proposition, which runs
contrary to basic canons of construction that requires a court to give effect to the contract's
unambiguous terms.  Here, the Policy clearly requires allocation, regardless of whether or not
the parties agree as to the amount of the allocation.  The parties likely contemplated that any
dispute as to allocation could be resolved by a court.

Plaintiffs also rely on *Acacia Research Corp. v. National Union Fire Ins. Co. of
Pittsburgh, PA*, in which the court granted summary judgment to the insured corporation and
refused to allocate costs between the insured corporation and its insured officer because the
*insurer* had breached the terms of this allocation provision and, alternatively, allocation would
not reduce the *insurer*'s liability to less than 100% of defense costs.  SACV 05-501 PSG
MLGX, 2008 WL 4179206, *9-10 (C.D. Cal. Feb. 8, 2008).  The D & O policy provided that:

> [T]he Company and the Natural Person Insureds and Insurer agree to use their
> best efforts to determine a fair and proper allocation of the amounts as between the
> Company and the Natural Person Insureds and the Insurer taking into account the
> relative and financial exposures, and the relative benefits obtained by, the Natural
> Person Insureds and the Company.  In the event that a determination as to the
> amount of Defense Costs to be advanced under the policy cannot be agreed to,
> then the Insurer shall advance such Defense Costs which the Insurer states to be
> fair and proper until a different amount shall be agreed upon or determined
> pursuant to the provisions of this policy and applicable law.

*Id.*  The court reasoned that it would not be "proper" for the insurer to benefit from this
allocation provision because the *insurer* breached the provision's terms when the "insurer did
not negotiate with [insureds] regarding any allocation and refused to recognize any valid claim,"
in violation of the express requirement that "allocation should occur after negotiations between
[insured company] and [insurer] about allocation terms."  *Id.* at *10.  Alternatively, the court
concluded that "no allocation of defense costs between [insured company] and [its insured
officer] is needed" because the liability of the former was coextensive with that of the latter.  *Id.*

("The Court finds that *all* defense costs incurred by [insured company] arose out of its indemnification of [insured officer] for alleged wrongful acts committed by [insured officer].").

     *Acacia* is distinguishable from the present case because here Insurer Defendants have *not* breached the terms of the Allocation Provision and allocation *would* reduce Insurer Defendants' liability to less than 100% of defense costs.  First, Plaintiffs do not argue and this Court does not hold that Insurer Defendants breached any terms of the Allocation Provision.  Second, the Court has already concluded that at least some of the Claims in the Underlying *Invotex* Action were not covered.  Because at least some of the Claims were not covered, allocation would reduce Insurer Defendants' liability to less than 100% of defense costs.

     Finally, as Insurer Defendants note, this Court's conclusion that the Policy's Allocation Clause contracted out of the default rule requiring a duty to defend is consistent with California courts' interpretations of Directors & Officers policies ("D & O policies") like that at issue here. As one California court recently explained:

> In D & O policies, there is generally no duty to defend clause. Instead, defense costs are defined as part of "Damages" for which indemnification is to be paid [by the insurer to the insured]. In that situation, the "contractual language limits reimbursement to costs incurred in the defense of claims that would be insurable under the [p]olicies." . . . In other words, in the absence of a contractual duty to defend, when defense costs are recoverable *only* as covered losses, only those defense costs which were actually related to the defense of covered claims may be reimbursed [by the insurer to the insured].

*Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 259 (2012), *as modified on denial of reh'g* (June 12, 2012); *see also Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 970 (9th Cir.2006); Rutter Cal. Prac. Guide Ins. Lit. Ch. 7B-B ¶ 7:514 ("Directors and officers liability policies generally do not obligate the insurer to defend claims against the insured. Instead, the insurer agrees to indemnify the insured for covered expenses, including defense costs.").

In sum, Plaintiffs have failed to show that the Policy obligated Insurer Defendants to pay 100% of defense costs at the time Individual Insured Plaintiffs settled.  Because the Policy did not require such payment by Insurer Defendants, Insurer Defendants did not breach by failing to make such payment.  Because Insurer Defendants' failure to pay 100% of defense costs was not a breach of the Policy at the time of the Individual Insured Plaintiffs' settlement, Individual Insured Plaintiffs' nonperformance is not excused.[9]

### 3. Insured Individual Plaintiffs' unexcused nonperformance constitutes a breach that excuses Insurer Defendants' performance

Having concluded that Plaintiffs have failed to show both that Insured Individual Plaintiffs' nonperformance is excused and that that Individual Insurer Defendants breached the Policy, the Court next analyzes whether Insured Individual Plaintiffs' nonperformance excuses Insurer Defendants' payment of settlement and/or defense costs.  The Court concludes that Insurer Defendants' performance is excused and thus GRANTS Insurer Defendants summary judgment as to both settlement and defense costs.

This case is very similar to *Endurance American Specialty Co. v. Lance-Kashian & Co.*, in which the court granted summary judgment to the insurer regarding costs to which it had not consented because the insurer did not breach the policy by proposing an allocation of defense

---

[9] At oral argument, Plaintiffs argued for the first time that their theory for breach of contract was *not* only that Defendants failed to pay 100% of defense costs, but also that Insurer Defendants failed to pay *any* defense costs.  However, this new argument is unavailing because Plaintiffs have offered no evidence that the Policy *covered* any defense costs.  Indeed, because Plaintiffs' have always maintained—until their about-face at oral argument—that the Allocation Provision failed to contract out of the default rule, Plaintiffs have never offered an interpretation of the Allocation Clause which would explain how to allocate defense costs, that is, which costs were covered and which were not.  Furthermore, as noted previously in this order, Plaintiffs have offered no admissible evidence that they ever incurred any defense costs covered by the Policy.

costs and the insured had violated a no-voluntary payment provision.  CV F 10-1284 LJO BAM,
2011 WL 5417103, *31 (E.D. Cal. Nov. 8, 2011).  The D & O policy contained an allocation
provision that stated:

> If a Claim made against any Insured includes both covered and uncovered matters
> or is made against both an Insured and others not insured under this Policy, the
> Insured and the Company agree that there must be an allocation between insured
> and uninsured Loss. The Insureds and the Company shall use their best efforts to
> agree upon a fair and proper allocation between insured and uninsured Loss.

*Id.* at *2.  The policy also contained a no-voluntary-payment provision that provided "the
Insured shall not, except at the Insured's own cost, make any payment . . . or assume any
obligation."  *Id.*  In November 2009, the insured "informed" the insurer of the underlying
litigation and, one month later, the insurer "propose[d] an allocation of one-third of the defense
costs incurred."  *Id.* at *4.  The insureds took the position that the insurer "should pay all
defense costs incurred by the insureds and [a non-insured]" and thus incurred costs for the non-
insured.  *Id.* at *11.  At summary judgment, the insurer argued that the insured had breached the
no-voluntary-payment provision by incurring defense costs for a non-insured without the
insurer's consent.  *Id.* at *18.  The insured countered that the insurer breached first by allocating
defense costs because the default rule provides that insurers "must pay all defense costs
'reasonably related' to the insureds' defense."  *Id.* at *23.  The court rejected the insured's
argument that the default rule applied because the "allocation provision mandates an allocation."
*Id.* at *25.  Because the insurer did not breach by allocating, the court enforced the no-
voluntary-payment provision and held that the insurer was not liable for costs to which it had
not consented.  *Id.* at *31.

Here, as in *Endurance*, summary judgment to Insurer Defendants is appropriate because
Insurer Defendants did not breach the Policy by proposing an allocation of defense costs and
Individual Insured Plaintiffs violated the no-voluntary payment provision.  Like in *Endurance*,
the Policy here contains an allocation provision that states: "[w]hen Insureds . . . incur an
amount consisting of both Loss that is covered by this Policy and also loss that is not covered by

this Policy because such Claim includes both covered and uncovered matters or covered and uncovered parties, then Loss shall be allocated between covered Loss and non-covered loss based upon the relative legal exposure of all parties to such matters."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 7.  The Policy also contains a no-voluntary-payment provision that provided states: "Insureds shall not . . . enter into any settlement agreement . . . or incur any Defense Costs regarding any Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld.  The Insurer shall not be liable for any . . . settlement . . . or Defense Costs to which it has not consented."  Pl. Ironshore's Statement of Genuine Dispute (Dkt. 139) at ¶ 3.  Like in *Endurance*, the Individual Insured Plaintiffs here informed Insurer Defendants of the underlying litigation and Insurer Defendants proposed an allocation of the defense costs.  Like in *Endurance*, the Plaintiffs take the position that the Insurer Defendants should pay all defense costs incurred.  Like in *Endurance*, Insurer Defendants argue that Individual Insured Plaintiffs breached the no-voluntary-payment provision by incurring costs—the settlement—without Insurer Defendants' consent.  Like in *Endurance*, Plaintiffs counter that Insurer Defendants breached first by allocating defense costs because the default rule provides that insurers must pay all defense costs reasonably related to the insureds' defense.  However, like in *Endurance*, this Court rejects Plaintiffs' argument that the default rule applies because the allocation provision clearly requires allocation and some of the Claims are not covered.  Thus, because Insurer Defendants' did not breach by proposing an allocation that paid less than 100% of the defense costs, the no-voluntary-payment provision is enforceable and thus Insurer Defendants are not liable for costs to which they did not consent.

In sum, because Plaintiffs have failed to show that 100% of defense costs were covered by the Policy at the time Individual Insured Plaintiffs settled—or even that *any* defense costs were covered—Plaintiffs have failed to show that Insurer Defendants breached prior to the settlement.  Because Plaintiffs have failed to show that Insurer Defendants breached, Plaintiffs have failed to show that their non-performance under the contract is excused.  Accordingly, the Court GRANTS summary judgment to Insurer Defendants as to both settlement and defense costs.  *See Crowley Mar. Corp. v. Fed. Ins. Co.*, C 08-00830 SI, 2008 WL 5071118, *9 (N.D.

Cal. Dec. 1, 2008) (holding that insurer was not required to pay settlement or defense costs "because [insured] had already violated [no-voluntary-payment provision] before [insured] informed [insurer] defendants of the settlement and sought their consent. Accordingly, California law is clear that defendants are not liable for any losses incurred or obligations assumed in violation of the insurance policy's consent provision.").

### c.  Impact of grant of summary as to settlement and defense costs

Plaintiffs' bad faith claim is premised on identical facts and law as the breach of contract claim for failure to pay defense costs that this Court has rejected; Plaintiffs contend that Insurer Defendants' failure to pay 100% of defense costs constitutes bad faith because it was unreasonable for Insurer Defendants to invoke their Allocation Provision.  *See* Pl. Ironshore's Opp'n (Dkt. 140) at 23.  The Court has already concluded that, in fact, it was the Individual Insured Plaintiffs who took the unreasonable position that the Allocation Provision inadequately contracted out of the default rule.  Accordingly, the Court GRANTS Insurer Defendants summary judgment on the SAC's claim for breach of the implied covenant of good faith and fair dealing.

In sum, the Court GRANTS summary judgment as to the two beach of contract claims for failure to pay defense costs and failure to indemnify, as well as the breach of the implied covenant claim.  This conclusion resolves the remaining claims for declaratory relief as to the rights and responsibilities of the parties and subrogation, and thus the Court GRANTS Insurer Defendants summary judgment as to those two remaining SAC claims.

### IV.    Disposition

For the foregoing reasons, the Court GRANTS Insurer Defendants summary judgment as to all the SAC claims (Dkt. 111) and DENIES Plaintiffs' partial motion for summary judgment (Dkt. 116).

DATED:  July 5, 2012

_David O. Carter_

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE